UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM H. THOMPSON,

    Petitioner,

                                    Case No. 2:17-cv-10048

v.

                                    HONORABLE STEPHEN J. MURPHY, III

J.A. TERRIS,

    Respondent,

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Petitioner William H. Thompson, Jr., a federal prisoner confined at the Federal Correctional Institution in Milan, Michigan, seeks habeas corpus relief under 28 U.S.C. § 2241. Thompson challenges his sentence as a career offender under U.S.S.G. § 4B1.1. For the reasons stated below, the Court will deny the petition.

### **BACKGROUND**

Thompson pleaded guilty to possession with intent to distribute 90 grams of cocaine base, 18 U.S.C. §§ 841(a)(1) and (b)(1), in the United States District Court for the District of Minnesota. The Court recites the relevant facts from the opinion and order denying Thompson's motion to vacate sentence:

> Thompson first pled guilty on February 28, 2003. At that time, Thompson and the Government stipulated to an adjusted base offense level of 31, which represented a base level of 32, plus 2 offense levels for the presence of a firearm, minus 3 levels for acceptance of responsibility. (Plea Agree. ¶¶ 6-11.) At that time, the parties contemplated a criminal history category of III, but stipulated that "if the defendant's Criminal History Category, as finally computed with the aid of the PreSentence Report, is greater than Category III, the parties may not withdraw from the agreement and agree that the defendant shall be sentenced in accordance with the applicable Sentencing Guidelines." (*Id.* ¶ 10.) Assuming an adjusted offense level of 31 and criminal

1

history category III, the resulting Guideline range was 135-168 months. (*Id.* ¶ 11.) In addition, the Government agreed to "refrain from filing a sentencing enhancement motion . . . based on the defendant's previous felony narcotics conviction." (*Id.* ¶ 5.) If Thompson agreed to provide substantial assistance to the Government in its investigation of drug trafficking and other criminal activity, the Government also agreed to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (*Id.* ¶¶ 4-5.) Thompson was released on bond pending sentencing so he could assist the Government with its investigations. (Tr. Feb. 28, 2003 Hr'g at 19-20.)

After accepting Thompson's plea, the Court ordered the Probation Office to conduct a presentence investigation. Probation issued its report ("PSI") on June 18, 2003. According to the PSI, Thompson was a career offender based upon three prior convictions for drug trafficking and violent crimes. (June 18, 2003 PSI ¶ 21.) Thompson's status as a career offender and his criminal history changed the Guideline range applicable to his sentencing. Specifically, Thompson's criminal history category was increased to VI, and his total offense level was increased to 34, resulting in an applicable Guideline range from 262 to 327 months. (*Id.* ¶ 105.)

On September 8, 2003, a warrant was issued for Thompson's arrest because he failed to report and absconded from justice. Thompson was finally arrested in Detroit on April 1, 2004. Prior to absconding, Thompson was charged with a new state crimes-trespassing and driving after cancellation. (April 30, 2004 Revised PSI ¶ 2.)

Based on these actions, Probation issued a revised PSI and recommended a two level enhancement for obstruction of justice under U.S.S.G. § 3E1.1, and no downward adjustment for acceptance of responsibility since Thompson engaged in obstructive behavior while on bond. (*Id.* ¶¶ 18-20.) According the revised PSI, Thompson's new offense level was 37, with a criminal history category of VI, resulting in a revised Guideline imprisonment range of 360 months to life. (*Id.* ¶ 106.)

On May 13, 2004, Thompson appeared before this Court on his motion to withdraw his guilty plea. At that hearing, the Government indicated that it had no objection to Thompson withdrawing his plea, but cautioned Thompson that he could get an even longer sentence, 360 months to life, if found guilty by a jury. (Tr. May 13, 2004 Hr'g at 4-5.) The Government indicated that if Thompson pled guilty, the Government would not insist on adding offense level points for obstruction, and would not object to allowing Thompson to receive a deduction for accepting responsibility. (*Id.* at 3, 7.) The Court, Thompson's counsel ("Counsel"), and the Government's counsel engaged in a colloquy wherein they informed Thompson that if he was found guilty by a jury, the Court would be bound to sentence him in the 360 months to life

range, and he would not be allowed to accept responsibility. (*Id.* at 2-10.) Counsel was concerned that Thompson was "hesitant" regarding his plea withdrawal, and the Court continued the hearing for over two weeks to give Thompson time to fully consider his decision. (*Id.* at 8-10.)

B. *Thompson's Sentencing*

On May 28, 2004, Thompson informed the Court that he did not want to withdraw his guilty plea. (Tr. May 28, 2004 Hr'g at 2.) The Court proceeded immediately to sentencing, and Counsel requested that the Court not add an obstruction of justice enhancement on the ground that Thompson's absconding did not actually hurt the case because Thompson had already pled guilty. (*Id.* at 3.) Counsel also asked the Court to give Thompson a reduction for acceptance of responsibility, and requested that Thompson be given the minimum sentence under the Guidelines. (*Id.*) The Government did not object to these requests. (*Id.* at 4.)

After allowing both Thompson and Counsel to make statements on Thompson's behalf, the Court granted Counsel's request and gave Thompson a 3 level decrease for acceptance of responsibility, and declined to assign an enhancement based on obstruction of justice. The Court then sentenced Thompson to the minimum sentence under the Guidelines: 262 months followed by five years supervised release. (*Id.* at 8.)

*United States v. Thompson*, No. CIV 05813MJD, 2005 WL 1923733, at *1–2 (D. Minn. Aug. 11, 2005).

Thompson did not file a direct appeal from his conviction. He did, however, file a motion to vacate sentence pursuant to 28 U.S.C. § 2255, which was denied. *Id.* at *3–6. Also, Thompson filed two additional motions for reduction of sentence, which were likewise denied. *See United States v. Thompson*, Crim. No. 02-308(MJD/JGL), 2010 WL 2545407 (D. Minn. June 18, 2010). Thompson has twice been denied permission by the United States Court of Appeals for the Eighth Circuit to file a successive motion to vacate sentence. *Thompson v. United States*, No. 15-3219 (8th Cir. June 16, 2016); *Thompson v. United States*, No. 16-2828 (8th Cir. Aug. 16, 2016). Thompson's petition for a writ of habeas corpus followed.

**DISCUSSION**

Thompson seeks habeas relief for his classification as a career offender under USSG § 4B1.1 of the federal sentencing guidelines. ECF 1, PgID 5. Thompson claims that his Iowa convictions for terrorism and domestic violence no longer qualify as crimes of violence, for purposes of the career-offender enhancement. He further claims that his Iowa conviction for possession of marijuana with intent to deliver does not qualify as a predicate, controlled-substance offense under the career-offender provisions. Thompson bases his claim on the recent Supreme Court decision of *Mathis v. United States,* 136 S. Ct. 2243 (2016) and the earlier decision of *Descamps v. United States*, 133 S. Ct. 2276 (2013).

A federal prisoner may bring a claim under 28 U.S.C. § 2241 challenging the imposition of a sentence only if a motion brought under § 2255 proves an "inadequate or ineffective" means to test the legality of the defendant's detention. *See Wooten v. Cauley,* 677 F.3d 303, 307 (6th Cir. 2012). Habeas corpus is not an "additional, alternative or supplemental remedy" to the motion to vacate, set aside, or correct the sentence. *Charles v. Chandler*, 180 F. 3d 753, 758 (6th Cir. 1999). The petitioner bears the burden to show that § 2255 is inadequate or ineffective; the mere fact that a prior motion to vacate sentence may have proven unsuccessful does not necessarily meet that burden. *In Re Gregory*, 181 F. 3d 713, 714 (6th Cir. 1999). The remedy afforded under § 2255 is not considered inadequate or ineffective simply because § 2255 relief has already been denied, or because the petitioner has been procedurally barred from pursuing relief under § 2255, or because the petitioner has been denied permission to file a second or successive § 2255 motion. *Wooten,* 677 F.3d at 303.

Until recently, a federal prisoner could not raise a challenge to his or her sentence under 28 U.S.C. § 2241. *See, e.g.*, *Jones v. Castillo*, 489 F. App'x 864, 866 (6th Cir. 2012). A federal prisoner thus could not use 28 U.S.C. § 2241 to raise a claim that he or she was "actually innocent" of a sentencing enhancement, including a career-offender designation. *Id.* The Sixth Circuit, however, recently modified this rule. In *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016), the Sixth Circuit held that federal prisoners who meet three prerequisites may challenge their sentencing enhancement as a career offender under § 2241 through the § 2255(e) savings clause: "(1) prisoners who were sentenced under the mandatory guidelines regime pre-*United States v. Booker*, 543 U.S. 220 (2005), (2) who are foreclosed from filing a successive petition under § 2255, and (3) when a subsequent, retroactive change in statutory interpretation by the Supreme Court reveals that a previous conviction is not a predicate offense for a career-offender enhancement." 836 F.3d at 599–600.

Thompson satisfied the first two pre-requisites under *Hill* to challenge his sentence enhancement under § 2241 petition because he was sentenced under the mandatory-guidelines provisions that existed prior to *Booker* and he is unable to bring a second successive motion to vacate sentence. The Government, however, contends that the Supreme Court holdings in *Descamps* and *Mathis* do not affect the predicate convictions for Thompson's career-offender enhancement, and he is thus not entitled to habeas relief.

A defendant is subject to the career-offender enhancement if, among other things, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a).

At the time of Thompson's convictions, the guidelines defined a crime of violence as:

5

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

Physical force means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

A controlled substance offense is defined, under the guidelines, in part, as

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

The Court relies on Armed Career Criminal Act (ACCA) case law to determine whether a prior conviction qualifies as a crime of violence, *see United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013), and to determine whether a prior drug conviction qualifies as a predicate drug offense under the career-offender guideline. *See United States v. Hinkle*, 832 F.3d 569, 574–75 (5th Cir. 2016). Under the ACCA, the Court takes a "categorical approach" to determine whether a prior conviction qualifies as a "crime of violence." *Descamps v. United States,* 133 S. Ct. 2276, 2281 (2013). Specifically, the Court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." *Id.* A

6

prior state conviction qualifies as a predicate offense "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.*

Prior to *Descamps*, the Supreme Court had approved a "modified categorical approach" in cases with a "divisible statute" that "sets out one or more elements of the offense in the alternative." *Id.* If one alternative under the statute was the equivalent of an element in the generic offense under the ACCA, but the other alternative mode of violating the statute was not, the sentencing judge could "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* The court could then compare the elements of the prior state conviction, including the alternative element used in that defendant's case, with the elements of the generic crime. *Id.* The Supreme Court in *Descamps* ruled that a sentencing court may not apply this modified categorical approach to determine whether a prior offense was a violent felony under the ACCA when the offense has a single, indivisible set of elements that is broader than the generic definition of the offense under the ACCA. *Id.* at 2285.

More recently, in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court reaffirmed these principles and added that a sentencing court "may not ask whether the defendant's conduct—his particular means of committing the crime—falls within the generic definition." *Id.* at 2257. When the state statute lists "alternative means of fulfilling one (or more)" of the elements, *id.* at 2253, a sentencing judge may not look into which of the different "means" of satisfying a certain element was present in the case before the court. *Id.* at 2256. "In other words, the modified categorical approach applies to statutes with alternative elements, but does not apply to statutes with alternative means of satisfying

7

a given element." *United States v. Jeffery*, No. 14-CR-20427-01, 2017 WL 764608, at *2 (E.D. Mich. Feb. 28, 2017).

As an initial matter, it is unclear whether Thompson's claim falls under the § 2255(e) savings clause, to permit him to bring a § 2241 habeas petition. Although the Sixth Circuit in *Hill* suggested that *Descamps* applies retroactively, so as to allow such a claim to be brought in a § 2241 habeas petition, a district judge in the Eastern District of Kentucky noted that "the Sixth Circuit [in *Hill*] did not independently determine that *Descamps* applied retroactively. Its decision rested on the fact the government *conceded* that in the specific context of the case, *Descamps* applied retroactively." *Boyd v. Francisco Quintanta, Warden*, No. CV 5:16-211-DCR, 2016 WL 6780307, at * 2 (E.D. Ky. Nov. 15, 2016) (emphasis in original). The *Boyd* court also noted that the Sixth Circuit previously held that *Descamps* did not announce a new rule of law, but merely reafffirmed the approach that district court should take under existing law. *Id. (*citing *United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014)). So, to the extent that the Sixth Circuit in *Hill* held that *Descamps* is a new rule of law, it appears to conflict with the earlier holding in *Davis* that *Descamps* was not a new rule of law.

When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the United States Supreme Court or by the Sixth Circuit sitting *en banc*. *See Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001). Thus, the Court is bound by the Sixth Circuit's earlier holding in *Davis* that *Descamps* did not announce a new rule of law.

Additionally, numerous judges in this district have concluded that *Mathis* likewise did not create a new rule of law made retroactively applicable on collateral review. *See, e.g.*,

8

*Sandlain v. United States*, No. 14-CR-20283, 2017 WL 2002005, at *5 (E.D. Mich. May 12, 2017). And every circuit to address the issue has held that *Mathis* is not retroactive on collateral review. *See United States v. Taylor*, 672 F. App'x. 860, 864–65 (10th Cir. 2016); *Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016); *In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016). Since neither *Descamps* nor *Mathis* created a new rule of law to be applied retroactively on collateral review, Thompson has not shown that § 2255 provides an inadequate or ineffective remedy.

In any event, his claim fails on the merits. Thompson was convicted in Iowa in 1993 of terrorism (later renamed "intimidation with a dangerous weapon with intent") in violation of Iowa Code § 708.6. *State v. Ross*, 845 N.W. 2d 692, 699 n.1 (Iowa 2014). The statute made it illegal to (1) shoot, throw, launch, or discharge a dangerous weapon (2) within an assembly of people when (3) the people are placed in reasonable apprehension of serious injury. *See id.* at 699. It also prohibited a person from threatening to commit such an act in a way that raised the reasonable expectation that the threat will be carried out. *Id.*

Iowa Code § 708.6 is categorically a crime of violence under U.S.S.G. § 4B1.2(a)(1), because it necessarily involves the use, attempted use, or threatened use of force regardless of how it is violated. *See United States v. Langston*, 772 F.3d 560, 562–63 (8th Cir. 2014); *vacated on other grounds,* 135 S. Ct. 2936 (2015). "When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under [§ 4B1.2(a)]." *United States v. Harris*, 853 F.3d 318, 321 (6th Cir. 2017).

Thompson, however, contends that Iowa's terrorism law does not qualify as a crime of violence for purposes of U.S.S.G. § 4B1.1 because it includes the word "throw," which

suggests that a brick or rock could qualify as a dangerous weapon. Thompson concludes that Iowa's law is therefore broader than the ACCA's definition of a dangerous weapon being a firearm, knife, or destructive device.

Thompson's argument is without merit because a brick or rock itself could qualify as a "destructive device" under the ACCA. *See, e.g.*, *United States v. Herron*, 432 F.3d 1127, 1138 (10th Cir. 2005) (holding that defendant's prior violations of state menacing statute were "violent felonies" within the meaning of the ACCA, because the ACCA definition of destructive device encompasses any "deadly weapon" including, for example, a "fist, foot, or whiskey bottle."). Thompson has not shown that Iowa's terrorism statute could be applied to an item that would not qualify as a destructive device. Indeed, Thompson has failed to show "a realistic probability, not a theoretical possibility, that [Iowa] would apply its statute," *United States v. Lamb*, 847 F.3d 928, 933 (8th Cir. 2017) (quotations omitted), to convict someone who had not used, attempted, or threatened "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. The Court concludes that Thompson's terrorism conviction qualifies as a crime of violence under § 4B1.1.

Next, Thompson contends that his Iowa conviction for domestic abuse does not qualify as a crime of violence, because Iowa's domestic-abuse statute sets out one or more elements of the offense in the alternative and is therefore divisible. He argues that the sentencing judge erred in failing to rely upon the proper documents to determine whether his assault conviction amounted to a crime of violence, as required by *Shepard v. United States*, 544 U.S. 13 (2005). In *Shepard*, the Supreme Court addressed the extent to which information about prior state convictions obtained by a guilty plea may be considered by a later sentencing court when determining the applicability of the ACCA to that conviction.

Thompson is not entitled to habeas relief on this claim. *Shepard* is not retroactively applicable on collateral review. *See, e.g.*, *Carrie v. Patton*, No. 08-CV-7-HRW, 2008 WL 466210, at *2 (E.D. Ky. Feb. 14, 2008). In addition, every circuit that has addressed the matter agrees that *Shepard* is not retroactive to cases on collateral review. *Garcia v. Warden*, 546 F. App'x. 888, 890–91 (11th Cir. 2013); *United States v. Hirano,* 294 F. App'x. 313, 314 (9th Cir. 2008); *Corey v. United States*, 221 F. App'x. 1, 2 (1st Cir. 2007); *United States v. Christensen*, 456 F.3d 1205, 1208 (10th Cir. 2006); *United States v. Armstrong*, 151 F. App'x. 155, 157 (3d Cir. 2005); *United States v. Davis*, 133 F. App'x. 916 (4th Cir. 2005) (per curiam). Because *Shepard* has not been made retroactive to cases on collateral review, the § 2255 savings clause does not apply and Thompson cannot raise this claim.

Thompson makes one final argument. Since Iowa's controlled substance law prohibits the manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance, *see* Iowa Code § 124.401(1), and the guidelines define a prior drug conviction as one involving the unlawful distribution of a controlled substance, Thompson concludes that his prior conviction for possession of marijuana with intent to deliver does not qualify as a predicate controlled substance offense.

Under federal law, "[t]he term 'distribute' means to deliver[.]" *See* 21 U.S.C. § 802(11). Thus, the crime of possession with intent to deliver is basically "indistinguishable" from the crime of possession with intent to distribute a controlled substance. *United States v. Ford*, 509 F.3d 714, 717 (5th Cir. 2007); *see also United States v. Smith*, No. 16-3380, 2017 WL 908225, at *4 (6th Cir. Mar. 7, 2017), *cert. denied*, No. 16-8679, 2017 WL 1346484 (U.S. May 15, 2017) (holding that defendant's prior state convictions for delivery of a controlled substance fell within U.S.S.G. § 4B1.2's definition

of controlled-substances offense).

Thompson relies on *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) in support of his claim. *Hinkle* is distinguishable, however, from Thompson's case. In *Hinkle*, the Fifth Circuit held that the defendant's prior controlled-substance offense could not be used for the career-offender enhancement because of the unique definition of "deliver" in the Texas criminal code. *Id.* at 576–77. The Texas code's definition of delivery included "offering to sell a controlled substance[.]" *Id.* at 572. The *Hinkle* Court held that because the Texas statute included "offering to sell" in its definition of "delivery," it "criminalizes a greater swath of conduct than the elements of the relevant [Guidelines] offense" and "cannot serve as a predicate offense under [§ 4B1.1]." *Id.* at 576–77.

Iowa's controlled-substance statute, however, does not define "deliver" more broadly than § 4B1.1. The Iowa code defines deliver to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance[.]" Iowa Code § 124.101(7). This language mirrors the federal definition, which defines deliver as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical[.]" 21 U.S.C. § 802(8). Because the Iowa definition does not criminalize "a greater swath of conduct" than the federal definition, *cf. Hinkle*, 832 F. 3d at 576, Thompson's prior state conviction for possession with intent to distribute marijuana qualifies as a predicate career-offender offense. Habeas relief is not warranted.

Finally, because a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States,* 355 F. 3d 501, 504 (6th Cir. 2004), Thompson need not apply for a certificate with this Court or with the Sixth Circuit before filing an appeal from the denial of his habeas petition.

**ORDER**

**WHEREFORE** it is hereby **ORDERED** that the Petition for Writ of Habeas Corpus [1] is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

<pre>
                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge
</pre>

Dated: June 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2017, by electronic and/or ordinary mail.

<pre>
                                        s/David P. Parker
                                        Case Manager
</pre>